Slip Op. 09 - 85

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - -X
AD HOC SHRIMP TRADE ACTION COMMITTEE,   :

                          Plaintiff,    :

                 v.                     :

UNITED STATES,                          :   Court No. 07-00380

                          Defendant,    :
              -and-
                                        :

GROBEST & I-MEI INDUSTRIAL (VIETNAM)
CO., LTD.,                              :

              Intervenor-Defendant.     :
- - - - - - - - - - - - - - - - - - - -X

Memorandum & Order

[Plaintiff's motion for judgment upon the
 agency record denied; action dismissed.]

                              Decided:  August 12, 2009

        Dewey & LeBoeuf LLP (Bradford L. Ward, Rory F. Quirk and
David A. Bentley) for the plaintiff.

        Tony West, Assistant Attorney General; Jeanne E. Davidson,
Director, Patricia M. McCarthy, Assistant Director, Commercial
Litigation Branch, Civil Division, U.S. Department of Justice
(Stephen C. Tosini); and Office of the Chief Counsel for Import
Administration, U.S. Department of Commerce (Jonathan Zielinski
and Aaron Kleiner), of counsel, for the defendant.

        Thompson Hine LLP (Matthew R. Nicely and Christopher M.
Rassi) for the intervenor-defendant.

        Heller Ehrman LLP (William H. Barringer) for Minh Phu
Seafood Corporation, Minh Qui Seafood Co., Ltd. and Minh Phat
Seafood Co., Ltd., *amici curiae*.

        AQUILINO, Senior Judge:  The Ad Hoc Shrimp Trade

Action  Committee,  an  association  of  U.S.  producers  and

processors of warmwater shrimp, having successfully petitioned the International Trade Administration, U.S. Department of Commerce ("ITA"), for imposition of the antidumping-duty order published at 70 Fed.Reg. 5,152 (Feb. 1, 2005), thereafter requested a first administrative review thereof pursuant to 19 U.S.C. §1675, which resulted in ITA's <u>Certain Frozen Warmwater Shrimp From the Socialist Republic of Vietnam: Final Results of the First Antidumping Duty Administrative Review and First New Shipper Review</u>, 72 Fed.Reg. 52,052 (Sept. 12, 2007), that are now at issue in this action brought in accordance with 19 U.S.C. §1516a(a)(2)(A) and 28 U.S.C. §§ 1581(c) and 2631(c).[1]

---

[1] The petitioner's request for ITA review initially implicated some 84 enterprises, only one of which, Vietnam Fish One Co., Ltd., fully participated as a respondent in the agency's proceedings that resulted in that company's assignment of a zero dumping margin for the period July 16, 2004 to January 31, 2006.  Margins ranging from 4.57 to 25.76 percent were assigned for that period of review to 15 other firms.  <u>See</u> 72 Fed.Reg. at 52,054, col. 2 and n. 9.

Vietnam Fish One Co. has not sought to intervene in this action, but Grobest & I-Mei Industrial (Vietnam) Co., Ltd., one of the many companies dropped from the ITA's review, then requested and was afforded agency review as a new shipper. While it too was ultimately assigned a dumping margin of zero [<u>see</u> <u>id</u>.], it has sought and obtained leave to intervene herein as a party defendant.

Come now Minh Phu Seafood Corporation, Minh Qui Seafood Co., Ltd. and Minh Phat Seafood Co., Ltd. alleging, among other

(footnote continued)

I

The precise focus of plaintiff's complaint, as reflected in the preliminary injunction it applied for and had entered, is the zero margin assigned to Vietnam Fish One Co., Ltd.  It now moves for judgment on the underlying ITA record pursuant to USCIT Rule 56.2.

A

As indicated, the country of origin of the merchandise that is subject to the antidumping-duty order is the Socialist Republic of Vietnam, which the ITA considers to be a "nonmarket economy country"[2] ("NME") within the meaning of the Trade Agreements Act of 1979, as amended, 19 U.S.C. §1677(18).

---

things, that they are large Vietnamese exporters of frozen warmwater shrimp to the United States, that they were not involved in the ITA administrative review *sub judice* herein but that they have been mandatory respondents in the second and the third such reviews.  Cf. Certain Frozen Warmwater Shrimp From the Socialist Republic of Vietnam: Final Results and Final Partial Rescission of Antidumping Duty Administrative Review, 73 Fed.Reg. 52,273 (Sept. 9, 2008); Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam: Preliminary Results, Preliminary Partial Rescission and Request for Revocation, In Part, of the Third Administrative Review, 74 Fed.Reg. 10,009 (March 9, 2009).  Whereupon they move in the absence of any appearance herein by Vietnam Fish One Co. for leave to file a brief as *amici curiae*, which motion can be, and it hereby is, granted.

[2] The statute defines this term, in general, to mean any foreign country that the ITA determines does not operate on

(footnote continued)

        To determine whether subject merchandise is being, or
is likely to be, sold in the United States at less than fair
value, the agency must make "a fair comparison . . . between the
export price or constructed export price and normal value."  19
U.S.C. §1677b(a).  When that merchandise emanates from an NME,
however, the actual export price is often not a valid source of
comparison due to the nature of such a country.  Whereupon the
ITA, in general, is to

> determine the normal value of the subject merchandise
> on the basis of the value of the factors of production
> utilized in producing the merchandise and to which
> shall be added an amount for general expenses and
> profit plus the cost of containers, coverings, and
> other expenses.  . . . [T]he valuation of the factors
> of production shall be based on the best available
> information regarding the values of such factors in a
> market economy country or countries considered to be
> appropriate by [it].

19 U.S.C. §1677b(c)(1).

        In this instance, the agency found

> Bangladesh to be a reliable source for surrogate
> values because Bangladesh is at a similar level of
> economic development pursuant to 773(c)(4) of the Act,
> is a significant producer of comparable merchandise,
> and has publicly available and reliable data.  . . .
> Furthermore, we note that Bangladesh has been the
> primary surrogate country in past segments and both
> the Petitioner and Respondents submitted surrogate
> values based on Bangladeshi data that are

---

market principles of cost or pricing structures, so that sales
of merchandise in such country do not reflect the fair value of
the merchandise.  See 19 U.S.C. §1677(18)(A).

> contemporaneous to the [period of review], which gives
> further credence to the use of Bangladesh as a
> surrogate country.

72 Fed.Reg. at 10,695 (citation omitted).  Furthermore, it

> determined that data contained in a study of the
> Bangladeshi shrimp industry published by the Network
> of Aquaculture Centres in Asia-Pacific ("NACA"), an
> intergovernmental organization affiliated with the
> UN's Food and Agriculture Organization, is a suitable
> surrogate value for shrimp from the surrogate country,
> namely, Bangladesh.

Id. at 10,697.


        The petitioner cum plaintiff continues to attempt to

impeach that study, which is entitled Evaluation of the impact

of the Indian Ocean tsunami and U.S. anti-dumping duties on the

shrimp farming sector of South and South-East Asia: Case studies

in Vietnam, Indonesia and Bangladesh (Oct. 2006) and apparently

publicly available on NACA's website.  According to ITA's Issues

and Decision Memorandum for the Final Results of the First

Antidumping Duty Administrative Review and First New Shipper

Review (Sept. 5, 2007)[3], which is at the core of the agency's

Final Results herein[4], the petitioner argued, among other things,

that the NACA study is unreliable because it was based on

_____

        [3] This document, which will be cited hereinafter as
"DecMemo", is on the ITA record and publicly available on the
ITA's website.

        [4] See 72 Fed.Reg. at 52,053, col. 2.

voluntary questionnaire responses that were not audited, that its coverage of the industry was limited, and that its data are incomplete because they do not contain two of the shrimp count sizes used in the margin calculation for Vietnam Fish One Co., Ltd.  See DecMemo, p. 3.  Now, the plaintiff pinpoints the study's alleged flaws as follows:

- The data obtained by the NACA Survey were based on voluntary information obtained through questionnaires from a limited number of Bangladeshi shrimp processors. . . .  In fact, the NACA Survey consists of just eight Bangladeshi shrimp processors.  . . .

- Further, the survey's coverage of Bangladeshi shrimp processors is scattershot -- Apex, one of the largest shrimp processors in Bangladesh, was not even included in the NACA Survey.  . . .

- Moreover, the NACA data not only were not audited, they are admittedly imprecise.  In fact, the NACA Survey concedes that "general price information" was collected from Department of Fisheries officers "with the aim of validating the general accuracy" of the survey.  NACA Survey at 56 (emphasis added).

- In addition, the NACA data are incomplete, as they do not include two of the shrimp count sizes used in the margin calculation, a flaw which required Commerce to fill in these data "holes" with extrapolated prices.  . . .  In contrast, the Apex prices cover all count sizes used in Commerce's margin calculation, and do not require any extrapolation of missing information.  . . .

Plaintiff's Memorandum of Law, pp. 8-9 (citations omitted; emphasis in original).

B

Whereupon the plaintiff postulates the issues it presents *viz.*:

    a. Whether Commerce erred when it valued raw shrimp based on the surrogate value from . . . the . . . NACA Survey . . . rather than on publicly available, audited, count-specific raw shrimp purchase prices from the Bangladeshi shrimp processor Apex Foods Ltd. . . . , which were on the record.

    b. Whether Commerce erred in the calculation of the surrogate financial ratios by excluding the financial statements of the Bangladeshi shrimp processor Bionic Seafood Exports Limited . . . because Bionic failed to show a profit.

Id. at 1-2 (citation omitted).

Seemingly, counsel's crafting of this action reduces it to an anomaly, even a paradox. That is, courts always contemplate *ab initio* the relief a party prays for. In the matter at bar, if this court understands plaintiff's position correctly, all that it seeks before liquidation of any Vietnam Fish One Co., Ltd. entries during the period of review is a dumping margin for that company greater than zero. Its memorandum of law and proposed order filed in conjunction with its motion for judgment on the agency record request remand to the ITA with "instructions" to correct defendant's errors. According to the foregoing issues presented, those "errors" boil

down to agency disregard of data from two particular Bangladeshi shrimp processors.  The plaintiff would have this court order the ITA to rely solely on information for Apex Foods Ltd. -- to the exclusion of data for other such processors in the surrogate state, either reflected in the NACA study or otherwise.  And even if, as the plaintiff argues, the Apex data are the "gold standard"[5], at least with regard to the seemingly-sole object of its complaint, Vietnam Fish One Co., Ltd.[6], there is no showing what impact that standard would have (or could have had) on the margins derived for the other 15 enterprises subject to the ITA's Final Results, supra.  In other words, the plaintiff would apparently allow those numbers to stand, albeit based upon the NACA data and agency record it otherwise seeks, for one company, to order the defendant to disregard.

C

As revealed in footnote 1, supra, the Final Results herein are but the first from an ITA review of the underlying antidumping-duty order, and, with the passage of time, other

---

[5] Plaintiff's Memorandum of Law, pp. 4, 8.

[6] Experienced counsel claim this is a rare instance in an NME proceeding where both the petitioner and a mandatory respondent agree on best surrogate information on the record for valuing the primary production input.  Id. at 4.

such reviews have been undertaken.  Indeed, the second review has been completed and the final results thereof published at 73 Fed.Reg. 52,273 (Sept. 9, 2008), and the agency has published preliminary results for its third review, 74 Fed.Reg. 10,009 (March 9, 2009).  Numerous parties have filed and/or joined in complaints over the final results of the second review per CIT Nos. 08-00301, -00325 and -00347, which matters have been ordered consolidated and which are now on the Court calendar for oral argument on September 16, 2009.  While the plaintiff herein, Ad Hoc Trade Action Committee, has been granted leave to appear therein as an intervenor-defendant, this court notes that it continued its complaint in the second review over the ITA's reliance on the NACA data.  See, e.g., Issues and Decision Memorandum for the Second Administrative Review, p. 7 (Sept. 2, 2008).  Hence, it seems safe to assume that that issue will entail multipartite litigation in the consolidated case in contrast with its paradoxical lie herein.[7]

---

[7] The court notes in passing that the ITA has continued to attribute a zero margin of dumping to Vietnam One Fish Co., Ltd. [see 73 Fed.Reg. at 52,276] but that it has, to date, denied that company's request for revocation of the antidumping-duty order as against it on the grounds of three consecutive years of no dumping.  See 74 Fed.Reg. at 10,011, col. 3.

II

In view of the foregoing, plaintiff's motion for judgment upon the agency record can be denied (without prejudice) and its anomalous action dismissed.

So ordered.

Decided:  New York, New York
          August 12, 2009


                              /s/ Thomas J. Aquilino, Jr.
                                    Senior Judge